# IN THE COURT OF APPEALS OF IOWA

No. 23-1864
Filed October 2, 2024

**SHAMROCK HILLS, LLC d/b/a SHAMROCK ROOFING AND CONSTRUCTION, LLC,**
        Plaintiff-Appellee,

**vs.**

**JUSTIN WAGONER,**
        Defendant-Appellant,

**and**

**JAI HUGHES,**
        Defendant.

_____

**JUSTIN WAGONER,**
        Counterclaim Plaintiff-Appellant,

**vs.**

**SHAMROCK HILLS, LLC d/b/a SHAMROCK ROOFING AND CONSTRUCTION, LLC,**
        Counterclaim Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

        A former salesperson for a roofing company appeals the denial of class certification for his contract and wage counterclaims. **AFFIRMED.**

        Adam D. Zenor of Zenor Kuehner, P.L.C., Des Moines, for appellant.

        Brandon Underwood of Fredrikson & Byron, P.A., Des Moines, for appellee.

        Considered by Tabor, C.J., and Greer and Schumacher, JJ.

**TABOR, Chief Judge.**

Two principles governing class-action certification clash in this appeal. On the one hand, the proponent of certification has a light burden. We construe the rules of civil procedure liberally for maintaining class actions. *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 114 (Iowa 2017). On the other hand, the district court enjoys broad discretion in deciding whether to certify a class action lawsuit. *Chicoine v. Wellmark, Inc.*, 2 N.W.3d 276, 282 (Iowa 2024). That second principle carries more weight here.

In rejecting Justin Wagoner's class certification request in his counterclaim against the company where he had been working, the district court concluded that he failed to show "common questions of law or fact [would] predominate over any questions affecting only individual [class] members." *Id.* at 283. Because a reasonable basis in the record supports that conclusion, we find no abuse of discretion and affirm.

## I. Facts and Prior Proceedings

Wagoner started working as a salesperson for Shamrock Hills Roofing and Construction[1] in January 2021. Codefendant Jai Hughes started at the same time as Wagoner.[2] In his first year on the job, Wagoner signed an "independent salesperson agreement" that classified him as an independent contractor rather than an employee. That agreement also included clauses prohibiting Wagoner

---

[1] Shamrock is a limited liability company headquartered in Kansas with an office in Urbandale that does business across several states.

[2] Wagoner and Hughes became friends and left to launch their own roofing company about sixteen months after joining Shamrock. In his answers to Shamrock's lawsuit, Hughes suggested that he wanted to join the proposed class action in the counterclaim, but he is not a party to this appeal.

from competing with Shamrock or using the company's confidential information without permission.

In May 2022, Wagoner and Hughes left the company—quitting on the same day.  Shamrock alleged that Hughes copied its business documents and replaced the Shamrock name with the name of their new roofing company.  The company also discovered that "in jobs that had been marked dead in the Shamrock system, activity occurred on the jobs, such as taking measurements.  When the homeowners on these dead jobs were contacted regarding their roofing needs, they would indicate that they went with another company, but would decline to reveal what company."  Shamrock alleged that these measures violated their signed agreements not to solicit its current or prospective customers.  It also purported that Hughes had new business cards delivered to the Shamrock offices.  After discovering these actions by Wagoner and Hughes, Shamrock sued them for breach of contract and conversion.

Wagoner responded by raising three counterclaims in a class-action countersuit, joining seventeen other individuals who signed the same independent sales agreement.  Undergirding Wagoner's claims was his contention that Shamrock's company-wide structural control made the proposed class members employees rather than independent contractors.  In the first claim, Wagoner alleged that in misclassifying him and the other workers as independent contractors, Shamrock owed them past wages under Iowa Code chapter 91A, the Iowa Wage Payment Collection Law.  Wagoner next argued breach of contract, stating that Shamrock treated its workers as employees and not independent contractors as the agreement stated.  Third, Wagoner requested declaratory

judgment asserting that the agreements were unenforceable because of the company's breach.

Wagoner asked the district court to certify two classes: a wage class consisting of Iowa workers and a contract class drawing in workers from other states.[3] Wagoner and two other class members submitted affidavits supporting class certification. Shamrock resisted. Tom McMahon, the company's general manager when Wagoner worked there, submitted an affidavit opposing class certification.

The district court denied certification, relying on *Roland v. Annett Holdings, Inc.* for its reasoning. 940 N.W.2d 752, 759 (Iowa 2020). It concluded that Wagoner failed to meet the predominance requirement for certifying class actions and that there was a "significant risk of the trial devolving into a series of 'mini trials.'" Wagoner appeals.

## II. Scope and Standards of Review

We review a ruling from the district court on class certification for an abuse of discretion. *Id.* at 757. To warrant reversal, the grant or denial of class certification must be unreasonable. *Freeman*, 895 N.W.2d at 113. We affirm if the

---

[3] Wagoner asked the district court to certify these classes:

   a. **Iowa Wage Payment Collection Act Class ("Wage Class")**: All salespeople who were classified as independent contractors while performing sales work for Shamrock Hills, LLC d/b/a Shamrock Hills Roofing and Construction in the state of Iowa.

   b. **Breach of Contract Class ("Contract Class")**: All salespeople who were classified as independent contractors while performing sales work for Shamrock Hills, LLC d/b/a Shamrock Hills Roofing and Construction in the United States of America.

district court weighed the proper factors and reached a reasoned conclusion on whether a class action would serve as a fair adjudication of the controversy. *Id.*

This case also presents a question of rule interpretation, which we review for the correction of legal error. *McGrew v. Otoadese*, 969 N.W.2d 311, 319 (Iowa 2022).

### III. Analysis

### A. Class Action as Counterclaim: "Playing Both Offense and Defense"

First, the opening act. We start with the threshold question whether class action certification is appropriate when asserted as a counterclaim. "Class actions are governed by Iowa Rules of Civil Procedure 1.261 through 1.279." *Benda v. Prairie Meadows Racetrack & Casino, Inc.*, 989 N.W.2d 184, 191 (Iowa 2023). None of those rules expressly prohibit a defendant in a non-class action lawsuit from asserting a counterclaim against the plaintiff on behalf of a class of similarly situated individuals. *See* Iowa Rs. Civ. P. 1.261–1.279. But neither do they expressly allow it. The district court was uncertain: "[I]t is not clear if Iowa's rules permit a counterclaim to be brought as a class action where the original action was not a class action." The court then assumed without deciding that such claims were permissible. But at the end of its analysis, the court returned to the counterclaim quandary, musing that it was "not fair for the potential class members to be represented by a party who is playing both offense and defense, potentially at other class members' expense."

For this appeal we, like the district court, will assume without deciding that Wagoner can seek class certification as a counterclaim. We do so because even if the rules allow Wagoner to request class certification, the district court acted

within its "considerable leeway" when finding he did not carry his burden to show that a class action would help achieve judicial economy while preserving the rights of the litigants. *See Freeman*, 895 N.W.2d at 115.

## B. Class Action Certification: "Significant Risk" of "Mini Trials"

On to the main event. Did the district court abuse its discretion in denying class certification? To resolve that question, we turn to Iowa's class-action framework. Class certification is proper when the proponent, here Wagoner, satisfies these conditions:

- Numerosity: Showing that "[t]he class is so numerous or so constituted that joinder of all members . . . is impracticable." Iowa R. Civ. P. 1.261(1).

- Predominance: Showing "[t]here is a question of law or fact common to the class." Iowa R. Civ. P. 1.261(2). "Predominance or commonality asks whether the class members have common issues that predominate over individual issues." *Legg v. W. Bank*, 873 N.W.2d 756, 759 (Iowa 2016).

- Fair and efficient adjudication of the controversy: Showing that consideration of the thirteen criteria listed in rule 1.263 favors class certification. Iowa R. Civ. P. 1.262(2)(b). Those factors center on achieving judicial economy while preserving the rights of the litigants. *Freeman*, 895 N.W.2d at 115.

- Representation: Showing that "[t]he representative parties fairly and adequately will protect the interests of the class." Iowa R. Civ. P. 1.262(2)(c).

In denying class certification, the district court focused on the predominance factor.[4] It noted that the proponent can satisfy this requirement by offering general evidence that proves or disproves an element on a class-wide basis, because that proof removes the need to examine each class member's individual circumstances. *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 45 (Iowa 2003). But the court found that Wagoner could not satisfy that requirement "given the fact-specific nature of determining employment relationships and the underlying initial action brought by Shamrock" against him and his codefendant Hughes. The court described the "significant risk" of the trial "devolving into a series of 'mini trials.'"

> Potential members for both classes will vary significantly in the facts regarding what type of hours they worked, how they operated, what Shamrock employee they reported to, and what their understanding of the Agreement was. In addition, the trial must also address the original action brought by Shamrock to enforce the non-compete clause of the Agreement. Forcing all of these factual issues to share one trial is not in the interest of judicial economy and instead unnecessarily complicates matters.

The court compared Wagoner's cases to *Roland*, where our supreme court held that despite all class members signing a memorandum of understanding (MOU), they were not so similarly situated that their employer's liability could be determined by generalized evidence. 940 N.W.2d at 760. Roland, a truck driver injured on the job, brought a workers' compensation claim against his employer challenging the MOU's legality because it limited the workers' benefits. *Id.* at 754.

---

[4] But not exclusively. The court also discussed some factors from rule 1.263(1) such as whether a class action offers "the most appropriate means of adjudicating the claims and defenses." And the court touched on the representation requirement, questioning whether Wagoner could fairly and adequately protect the interests of the class members given Shamrock's claims against him.

Roland sought to certify a class of forty other claimants who signed the MOU. *Id.* But the supreme court reversed the certification because "[t]he question of the MOU's legality cannot be resolved for all drivers in a single adjudication." *Id.* at 760. The *Roland* court reasoned: "Facts will differ regarding distance traveled, types of injury, care received, and other factors that may go into the analysis of undue inconvenience, and proof on these issues cannot be established without individualized evidence." *Id.*

The district court's reliance on *Roland* rankles Wagoner. He claims *Roland* is neither "instructive nor relevant to the certification question at issue here" because his claims against Shamrock "do not involve analysis of disparate medical treatment codes, for distinct workplace injuries, sustained by a variety of employees living in a variety of locations around the country."

While Wagoner is right about those factual differences from *Roland*, the district court was reasonable in deciding that a similar range of individualized inquiries would be necessary to prove the sales managers' claims against Shamrock. For example, Wagoner asserts that after Shamrock terminated his employment and then rehired him, he never signed another agreement. And when he told Shamrock he was going to run his own business, he recalled that one of the principals shook his hand and said "good for you."

As the parties agree, "categorizing a person as an employee or an independent contractor" depends on "the extent of control by the employer over the details of the alleged employee's work." *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997). But "in every case where the issue was whether the person was an employee or an independent contractor, the court [has] weighed

the parties' intention as it reflected upon the employment relationship." *Id.* at 543. Such individualized intent issues support the district court's decision that Wagoner did not meet the predominance factor.

True, Shamrock's independent salesperson agreement supplies a common denominator to the claims of the class. But that agreement alone does not provide the "question of law or fact common to the class" needed for certification. Iowa R. Civ. P. 1.261(2); *see Roland*, 940 N.W.2d at 757. On this record, the district court did not believe that generalized proof could resolve whether the sales managers were misclassified as independent contractors or what injuries they suffered from being misclassified. Even if we were inclined to decide that question differently ourselves, we find no abuse of discretion in the district court's analysis. When it is rational to conclude that individualized questions overwhelm common ones, class certification may be denied.

The district court also gave two other sound reasons for turning down Wagoner's request. One, Wagoner argues that Shamrock cannot enforce the agreement against him for reasons that do not apply to other class members. And two, refusing to certify the class action is unlikely to harm potential class members who might bring their own actions.

One final point. Wagoner criticizes the district court for speculating on the merits of his underlying claim without any discovery to establish factual differences that preclude class certification. *See Freeman*, 895 N.W.2d at 120 (declining to "engage in free-ranging merits inquiries at the certification stage" (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013))). Wagoner is correct that class certification does not depend on whether he and the class will

ultimately prevail on the merits. *See id.* But as our supreme court has recognized, deciding whether he met the requirements for class certification will "entail some overlap with the merits" of his underlying allegations. *Id.* The district court did not speculate on or assess the merits of his counterclaim beyond what was necessary to decide whether he met the requirements for class certification.

Finding no abuse of discretion in the district court's denial of class certification, we affirm its ruling.

**AFFIRMED.**